■ MANUEL MAYO et al., Respondents, v METROPOLITAN OPERA ASSOCIATION, INC., et al., Appellants-Respondents. METROPOLITAN OPERA ASSOCIATION, INC., Third-Party Plaintiff-Appellant-Respondent, v STRAUSS PAINTING, INC., et al., Third-Party Defendants-Respondents-Appellants, and NOVA CASUALTY COMPANY, Third-Party Defendant-Respondent. [969 NYS2d 39]—

Order and judgment (one paper), Supreme Court, New York

County (Doris Ling-Cohan, J.), entered November 4, 2011, which, to the extent appealed from, granted plaintiffs' motion for summary judgment on the issue of liability under Labor Law § 240 (1), denied defendant Lincoln Center's motion to dismiss the Labor Law §§ 240 (1) and 200 and common-law negligence causes of action as against it, granted defendant/ third-party plaintiff Metropolitan Opera Association's (the Met) motion for summary judgment on its claims against third-party defendants Strauss Painting and Creative Finishes for breach of an agreement to procure insurance, denied Strauss's and Creative's motions for summary judgment dismissing the third-party complaint as against them, denied the Met's and Creative's motions for summary judgment declaring that third-party defendant Nova Casualty Company is obligated to indemnify and defend them, and granted Nova's motion for summary judgment declaring that it has no obligation to indemnify the Met or Creative, and so declared, unanimously modified, on the law, to deny the Met's motion for summary judgment on its breach of contract cause of action as against Creative, and otherwise affirmed, without costs.

On or about September 3, 2008, the Met contracted to have the steel carriage rail for its automated window-washing system, which goes around the roof of the Opera House, stripped and repainted. The contract identified the "Contractor" as "Strauss Painting, Inc./Creative Finishes, Ltd.," but the only signature under "Contractor" was that of Strauss's vice president. Strauss subcontracted with Creative to perform the work.

To access the roof and the steel carriage rail, Creative's employees, including plaintiff Manuel Mayo (plaintiff), had to climb a ladder located on the sixth floor of the Opera House and exit onto the roof through a hatch door in the ceiling. Plaintiff and his witnesses testified that the hatch door was easy to open, but difficult to close, in part because of a broken hinge, and that two hands were required to close it. Indeed, Lincoln Center's chief engineer, who had used the hatch at least 100 times, testified that to close the hatch a worker had to break three-point contact with the ladder and somehow wedge his body up against the concrete side of the hatch so as to safely reach up with both hands to close the door. On or about September 16, 2008, plaintiff fell off the ladder while trying to close the hatch using both hands.

The record demonstrates that the Met and Lincoln Center failed to provide adequate safety devices to protect plaintiff from the risks associated with gaining access to the Opera House roof and the steel carriage rail, and therefore they are liable for

plaintiff's injuries under Labor Law § 240 (1) (*see Felker v Corning Inc.*, 90 NY2d 219 [1997]). Not only did plaintiff have to be elevated to the roof of the Opera House from the sixth floor, for which a ladder was provided, but he also had to use both hands to close the hatch door while standing on the ladder. No safety device was provided to protect him against the risk associated with breaking three-point contact with the ladder so as to use both hands to close the hatch door.

Lincoln Center argues that the Labor Law § 200 and common-law negligence claims should be dismissed as against it because it did not create or have any notice of a defect in the hatch door. However, its chief engineer's testimony that a worker standing on the ladder had to wedge his body against the wall to avoid falling while reaching up with both hands to close the hatch door raises an issue of fact whether Lincoln Center had notice of the defect in the hatch door. Lincoln Center also argues that it was an out-of-possession landlord not responsible for the maintenance of the Opera House. However, since it raises this argument for the first time on appeal, we decline to consider it. Were we to consider it, we would reject it. Lincoln Center contends that since it has a contractual right to reenter, inspect and repair, it can be held liable for a dangerous condition on the premises only if it had notice of a significant structural or design defect that is contrary to a specific statutory safety provision (citing *Heim v Trustees of Columbia Univ. in the City of N.Y.*, 81 AD3d 507 [1st Dept 2011]). As indicated, the aforementioned testimony of its chief engineer is sufficient to raise an issue of fact as to its notice of the defect in the hatch door.

The Met seeks indemnification and contribution from Strauss and Creative and damages arising from their failure to procure owner's and contractor's liability insurance. Strauss's vice-president, who signed the general contract, testified that he was also a vice-president of Creative and had authority to bind Creative to the general contract. However, the presidents of Strauss and Creative dispute this; they claim that Creative is not bound by the general contract. Thus, while the record demonstrates that Strauss is liable to the Met for its failure to procure insurance, issues of fact whether Creative was contractually obligated to procure insurance preclude a finding that Creative too is liable to the Met for a failure to procure insurance.

With respect to Nova's obligation to defend or indemnify either the Met or Creative, the issue of fact whether Creative is bound by the general contract precludes a finding that the Met is an additional insured under the policy issued to Creative by

Nova. However, Nova is not in any event obligated to defend or indemnify the Met or Creative, because the Met's notice of claim was untimely. Of course, if Creative is not bound by the general contract, then Nova is not obligated to defend or indemnify the Met because the Met is not an additional insured under the policy. It does not avail the Met that the subcontract incorporates the general contract by reference, because the policy requires that there be a written agreement between Creative and the Met, as the organization seeking coverage, that the Met will be named an additional insured under the policy (*AB Green Gansevoort, LLC v Peter Scalamandre & Sons, Inc.*, 102 AD3d 425 [1st Dept 2013]).

Nova's disclaimer of coverage within 30 days of receiving notice of the claim was timely as a matter of law (*see e.g. Public Serv. Mut. Ins. Co. v Harlen Hous. Assoc.*, 7 AD3d 421, 423 [1st Dept 2004]). Concur—Mazzarelli, J.P., Acosta, Saxe, Freedman and Clark, JJ.